UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>DAVID OQUENDO,<br><br>Defendant. | 13 Cr. 357-1 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant David Oquendo, who is currently housed at the United States Penitentiary Big Sandy in Inez, Kentucky ("USP Big Sandy"), has applied for compassionate release, in the form of his immediate release from custody, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support, Mr. Oquendo cites various medical issues that he has experienced during his confinement, as well as the conditions of his confinement during the ongoing COVID-19 pandemic. The Government opposes this motion. As set forth in the remainder of this Order, the Court grants in part Mr. Oquendo's motion.

## BACKGROUND

On April 22, 2013, Mr. Oquendo was charged in a criminal complaint with Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Dkt. #1). The charges stemmed from Mr. Oquendo's participation in a crew involved in armed robberies of homes and businesses in the Bronx during which victims were forcibly restrained. Two days later, Mr. Oquendo was arrested on these charges and detained. (Minute Entries for April 24, 2013). On May 13, 2013, Mr. Oquendo and two co-defendants — his brother

Johnny Oquendo and Thomas Hipolito — were indicted on those two charges as well as one count of conspiracy to commit Hobbs Act robbery.  (Dkt. #6).  The case was assigned to then-United States District Judge William H. Pauley III.  (Minute Entry for May 21, 2013).  On October 28, 2013, David and Johnny Oquendo were indicted on a superseding indictment that charged them with one additional Hobbs Act robbery and one additional Section 924(c) count.  (Dkt. #53 (the "S2 Indictment")).

One month later, on November 26, 2013, Mr. Oquendo entered a plea of guilty to Count One of the S2 Indictment, which charged him with conspiracy to commit Hobbs Act robbery, pursuant to a plea agreement with the Government.  (Minute Entry for November 26, 2013; Final Presentence Investigation Report ("PSR" (Dkt. #78)) ¶ 8).[1]  In the plea agreement, the parties stipulated that Mr. Oquendo was a career offender under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), and that the applicable Guidelines range was 151 to 188 months' imprisonment.  (PSR ¶ 8).  During his plea allocution, Mr. Oquendo admitted that "from May 2012 to May 2013, in the Bronx, New York, he conspired with others to commit robberies of jewelry stores and restraints were used."  (*Id.* at ¶ 24).

Thereafter, the United States Probation Office prepared the PSR in this case; the PSR indicated, among other things, that Mr. Oquendo had

---

[1]     That same day, Mr. Oquendo's brother Johnny entered a guilty plea to a superseding information, S3 13 Cr. 357 (WHP), charging him with possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Dkt. #73), for which he was sentenced principally to a term of imprisonment of 60 months (Dkt. #94).

approximately ten prior criminal convictions, among which were two prior convictions for criminal sale of a controlled substance in the third degree and two prior convictions for robbery in the third degree.  (*See generally* PSR ¶¶ 55-77).  The Probation Office also noted the difficult circumstances of Mr. Oquendo's upbringing, which included his mother's murder (likely at the hands of his father) and his father's frequent incarceration (*id.* at ¶¶ 81-88), and Mr. Oquendo's asthma (*id.* at ¶ 90).

Sentencing for both David and Johnny Oquendo took place on March 21, 2014.  (*See* Dkt. #98 (sentencing transcript); Dkt. #93 (David Oquendo judgment)).  As relevant here, Mr. Oquendo sought a non-Guidelines sentence of approximately 120 months; defense counsel noted that while his client had previously served jail time for several of his prior convictions, he had never faced as much time as he had in this case.  (Dkt. #98 at 5-6).  Counsel also detailed Mr. Oquendo's "horrific upbringing."  (*Id.* at 7-9).  Mr. Oquendo apologized for his actions and for the consequences to his victims and his family.  (*Id.* at 16-17).

Judge Pauley then imposed sentence.  (Dkt. #98 at 19-25).  He acknowledged the brothers' "shocking childhood": "Their lives were infested with drugs, and their caregivers were feeding them drugs as young children to keep them from reporting the adults to the police.  It's just an unbelievable story, but I believe it."  (*Id.* at 20).  However, Judge Pauley noted, the brothers were "in their mid-thirties, and they're continuing to commit violent crimes."  (*Id.*).  He cited "an important need … for deterrence in both cases" (*id.* at 21),

before ultimately imposing a sentence of 151 months' imprisonment on Mr. Oquendo:

> Mr. Oquendo, in my remarks, I've tried to impress upon you how violent the trajectory is that you're on, and you can't be committing these kinds of crimes at this stage in your life.  You need a very significant term of imprisonment because you are a violent and dangerous robber, and brandishing guns, and tying up victims. You're a menace and a danger to the community.  Your prior terms of incarceration have not caused you to rethink what you're doing.  So you need a lengthy time out.  It's my view that a sentence at the low end of the guideline range is not more than is necessary in this case to ensure deterrence and respect for the law.

(*Id.* at 22).

In May 2022, the case was reassigned to this Court.  (Dkt. #141).  On June 8, 2022, Mr. Oquendo filed his counseled motion for compassionate release with supporting exhibits.  (Dkt. #143).  The Court ordered a response from the Government (Dkt. #144), and the Government's letter brief in opposition was filed on July 25, 2022 (Dkt. #148).  After obtaining authorization from the Court (Dkt. #149), Mr. Oquendo filed a reply submission on August 5, 2022 (Dkt. #150).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

4

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *cf. United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the Government may waive or forfeit the exhaustion requirement).

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities.

5

Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement).  Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)].  Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence.  These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons").  The court's discretion also includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence.  *See Brooker*, 976 F.3d at 237.

6

## DISCUSSION

The parties agree, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied.  (*See* Dkt. #143 at 19; Dkt. #148 at 3).  The Court thus proceeds to consider whether Mr. Oquendo has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has.

The Court addresses Mr. Oquendo's claims out of order, beginning with his claim that his current medical conditions — which includes kidney issues, hypertension, pre-diabetes, and hepatitis C — expose him to a risk of severe infection from COVID-19.  (Dkt. #143 at 29-31).  Courts in this District have granted, and denied, compassionate release motions predicated on the existence of the COVID-19 pandemic and the risks of its transmission in prisons.  *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) (collecting cases).  This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases).

As to this issue, Mr. Oquendo has not made a sufficient showing.  To begin, Mr. Oquendo is 44 years old, and people over 40 years of age have been identified by the Centers for Disease Control and Prevention (the "CDC") as a

group who may be more susceptible to hospitalization or death if they were to contract the COVID-19 virus.  *See* CDC, *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (accessed January 16, 2023).  The CDC has also identified chronic kidney disease as a condition that might increase an individual's chances of contracting severe illness from the COVID-19 virus.  *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed January 16, 2023).[2]  But the Court has reviewed with care Mr. Oquendo's BOP medical records, which indicate that (i) his prior kidney and liver issues are largely resolved and (ii) he has worked successfully with BOP medical professionals to address his remaining health issues during the pandemic.

The Court also observes that Mr. Oquendo has received the COVID-19 vaccine.  (Dkt. #143 at 30; Dkt. #149 at 8).  Mr. Oquendo's vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of "extraordinary and compelling reasons."  *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health

---

[2]    The CDC does not list pre-diabetes or Hepatitis C as a condition that puts someone at a higher risk of severe illness from COVID-19, although the CDC notes that its listing may not be exhaustive.

conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled.  Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

As it has in prior cases, the Court has also considered the risk to Mr. Oquendo as a result of his imprisonment at USP Big Sandy.  *See, e.g.*, *United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020).  To that end, this Court has scrutinized the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed January 16, 2023), as well as the BOP's listing of confirmed cases among inmates and staff at each facility.  As of the date of this Order, USP Big Sandy was listed among the BOP's "Level 2 Facilities," a designation given to facilities operating with moderate modifications.  In addition, the BOP has identified no current cases of COVID-19 among inmates or staff at USP Big Sandy.  On balance, this Court concludes that the danger that Mr. Oquendo faces from infection with COVID-19, even accounting for his proffered risk factors, does not in and of itself amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a

9

particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

But Mr. Oquendo has offered an additional argument for compassionate release based on his medical conditions — namely, that violence and mistreatment he experienced in 2020 and 2021 at the hands of prison staff created or exacerbated serious medical conditions, and thus provide two other bases for compassionate release, insofar as they reflect inordinately harsh conditions of confinement and an inability on the part of BOP staff to care for Mr. Oquendo's medical conditions.  (*See, e.g.*, Dkt. #143 at 21-26).  On this point, the Court offers a few preliminary observations.  To begin, the parties present divergent narratives surrounding the circumstances of (and BOP's reaction to) Mr. Oquendo's November 2020 and January 2021 seizures; Mr. Oquendo contends that he was beaten on both occasions while he was in the midst of the seizures (*id.* at 8-10), while the Government contends that any injuries Mr. Oquendo suffered were the product of either his seizures or his efforts to resist prison staff as they attempted to help him (Dkt. #148 at 6).  There is support in the record for both positions:  Mr. Oquendo has identified several inconsistencies in internal BOP records of the encounters on those dates (*see, e.g.*, Dkt. #150 at Ex. A-B), but the Government is correct that the recorded injuries are equally consistent with accidental harms inflicted by Mr.

Oquendo on himself during the seizures.[3]  In addition, the evidence suggests that BOP may have acted incorrectly, but in good faith, in diagnosing Mr. Oquendo's medical issues.  That is, BOP medical records reflect that on both occasions, BOP staff administered Narcan to Mr. Oquendo, believing that his seizures were the product of illicit drug use, a hypothesis that does not appear to have been borne out by subsequent medical tests.  (Medical Records).  It is also significant to the Court that Mr. Oquendo had no history of seizures before November 2020, and that as a result of the medical treatment that he received outside of USP Big Sandy in January and February 2021 and within the facility since then, he has not had a recurrence of the seizures and appears to have resolved his kidney and liver issues.

The fact remains, however, that Mr. Oquendo has had a number of serious medical issues while in federal detention.  Separate and apart from the seizures, which resulted in concussions, hematomas, and other head injuries, Mr. Oquendo was diagnosed in January 2021 with sepsis, acute kidney injury (to the point of renal failure and several weeks of dialysis), hepatitis C, and rhabdomyolysis (a condition involving the breakdown and dissolution of damaged skeletal muscle and the concomitant release of that muscle's contents into the bloodstream).  (Medical Records).   Though the majority of those conditions were resolved with medical attention in 2021, Mr. Oquendo also

---

[3]     Mr. Oquendo has brought a lawsuit under the Federal Tort Claims Act against the Government claiming the excessive use of force against him in November 2020 and January 2021.  Because the Court is resolving the instant compassionate release motion based on the gravity of Mr. Oquendo's medical issues, and not their genesis, it need not resolve these factual disputes between the parties.

11

reported blurry vision, kidney pain, and swelling in his extremities later that year.  By 2022, Mr. Oquendo's then-current medical conditions were listed as seizure disorder and primary hypertension.  Thus, it appears to the Court that the worst of Mr. Oquendo's medical issues have been resolved.  That said, the fact that Mr. Oquendo experienced so many acute medical issues while incarcerated indicates that his detention, irrespective of the COVID-19 pandemic, resulted in more deleterious consequences to his health than were faced by other federal inmates during this period.

This conclusion dovetails with another basis that this Court has recognized for compassionate release, namely, that the conditions of Mr. Oquendo's confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than Judge Pauley could have contemplated when he originally sentenced him in March 2014.  While Judge Pauley carefully balanced the information then available to him, he could not have foreseen the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like Mr. Oquendo who have spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and

more punitive than would otherwise have been the case.'" *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.").  In short, the Court has previously concluded, and concludes here, that pandemic-induced conditions of confinement can constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic.  Here, there can be no serious dispute that, using just the metric of his health, Mr. Oquendo has experienced harsher conditions of confinement than could have been anticipated, and the Court finds that the length and totality of these conditions amount to extraordinary and compelling circumstances under § 3582(c)(1)(A)(i).  It therefore proceeds to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

The Court concludes that the factors set forth in 18 U.S.C. § 3553(a) — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(1), (a)(2)(C) — counsel in

favor of a reduction in sentence.  The Court acknowledges that Mr. Oquendo's offense conduct was egregious, and that he had a substantial criminal history prior to the instant offense.  The Court also notes certain blemishes on Mr. Oquendo's prison disciplinary record; while the defense argues that several of them were fabricated by BOP staff, there are incidents in 2016, 2017, and 2018 that do not appear to fall within that category.  (Disciplinary Records).  The Court observes that Mr. Oquendo has had no disciplinary incidents since August 2021.  (*Id.*).  With respect to positive developments, the Court is pleased to learn of Mr. Oquendo's efforts to rehabilitate himself in prison and of his detailed reentry plan.  (*See, e.g.*, Dkt. #143 at 31-36; Dkt. #143-3; Dkt. #150 at 4-5).  Finally, and as suggested by the remainder of this Order, the Court continues to be concerned about future medical issues that might befall Mr. Oquendo during the remainder of his sentence.  For all of these reasons, the Court will grant Mr. Oquendo's motion to the extent that it will impose a 14-month reduction in his sentence.

## CONCLUSION

For the foregoing reasons, Defendant David Oquendo's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED IN PART, insofar as his sentence is modified to reduce the term of imprisonment on Count One from 151 months to 137 months.  All other aspects of the sentence remain in full force and effect.

The Clerk of Court is directed to terminate the motion at docket entry 143.

SO ORDERED.

Dated:   January 17, 2023
        New York, New York

                                                KATHERINE POLK FAILLA
                                         United States District Judge